UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INJAH TAFARI,                                                     :

                Plaintiff,                          :             06 Civ. 11360 (GBD) (AJP)

         -against-                          :         **REPORT AND RECOMMENDATION**

PAUL W. ANNETS, et al,                                     :

              Defendants.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

        Pro se plaintiff Injah Tafari, an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brought this action pursuant to 42 U.S.C. § 1983

and the First, Eighth and Fourteenth Amendments, alleging that defendants violated his right to the

free exercise of religion, inflicted cruel and unusual punishment, and discriminated against him

based on race. (Dkt. No. 38: 2d Am. Compl. [hereafter, "Compl."] at 1-2.) This Court previously

severed and transferred Tafari's claims against DOCS defendants outside the Southern District of

New York, and dismissed certain of Tafari's claims against the S.D.N.Y. defendants. See Tafari v.

Annets, 06 Civ. 11360, 2007 WL 2994367 (S.D.N.Y. Oct. 15, 2007) (Peck, M.J.), familiarity with

which is assumed. The Court denied defendants' motion to dismiss with respect to Tafari's claims

relating to denial of Kosher meals in transit on January 16 and 20, 2004, June 20, 2005, July 26,

2005 and September 26, 2005, and on reconsideration, Tafari's claim against defendant Rabbi Chill over Tafari's request to be transferred to Green Haven Correctional Facility.  Tafari v. Annets, 2007 WL 2994367 at *18-19.  (See also Dkt. No. 56: 10/29/07 Memo Endorsed Order, aff'd, 2008 WL 591804 (S.D.N.Y. Mar. 3, 2008).)

Presently before the Court is defendants' summary judgment motion.  (Dkt. No. 65.) For the reasons set forth below, defendants' summary judgment motion should be GRANTED, and Tafari's complaint dismissed.

## **FACTS**

Pro se plaintiff Injah Tafari is incarcerated at Clinton Correctional Facility, where he has "continuously been in keeplock or SHU [Special Housing Unit] confinement since May, 2003." (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶¶ 1, 17, 37, 38; Dkt. No. 73: Jordan Aff. ¶¶ 13, 14.)  Tafari is a Rastafarian Jew,[1] and has been registered with the DOCS Division of Classification and Movement as Jewish since October 9, 2003, when he changed his registered religion from Rastafarian to Jewish.  (Defs. Rule 56.1 Stmt. ¶¶ 2-4; Reznik Aff. Ex. B: Tafari Dep. at 7; Jordan Aff. ¶ 11; Dkt. No. 75: Leonard Aff. ¶ 8.)

Tafari participates in a Kosher meal program and receives Kosher meals three times a day in the form of the Kosher Cold Alternative Diet ("CAD").  (Defs. Rule 56.1 Stmt. ¶¶ 5, 17, 18;

---

[1] Specifically, Tafari states that he is "Jewish/Hebrew/Israelite/Ethiopian[Orthodox Jew-ism]," part of the "Nayabinghi House of Jah Rastafari, a Rastafarian sect of the line of Judah." (Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 7; see also Defs. Rule 56.1 Stmt. ¶ 4.)  Tafari has practiced his religion since birth.  (Tafari Dep. at 7; Defs. Rule 56.1 Stmt. ¶ 4.)

Jordan Aff. ¶ 12; Leonard Aff. ¶¶ 6, 8; Tafari Dep. at 79-80.) DOCS provides Kosher meals, mainly in the form of the CAD, to any inmate registered as Jewish who requests Kosher meals.[2] (Defs. Rule 56.1 Stmt. ¶ 5; Leonard Aff. ¶ 6; Dkt. No. 71: Schattinger Aff. ¶ 5.) DOCS' Department of Nutritional Services prepares the CAD menu in coordination with DOCS' Director of Ministerial Services. (Defs. Rule 56.1 Stmt. ¶ 7; Schattinger Aff. ¶ 6.) The CAD, which is not a vegetarian diet, has been standardized since 1992. (Defs. Rule 56.1 Stmt. ¶¶ 13-14; Schattinger Aff. ¶¶ 11-12.) Most DOCS correctional facilities do not have Kosher kitchens or the ability to prepare on-site Kosher meals; Kosher food is prepared at Oneida Correctional Facility – which maintains a Kosher-compliant kitchen – and sent to individual facilities.[3] (Defs. Rule 56.1 Stmt. ¶¶ 6, 8-12; Schattinger Aff. ¶¶ 5-8.)

DOCS also provides inmates with an alternative vegetarian meal, which may or may not be Kosher, depending upon the particular ingredients and how it is prepared. (Defs. Rule 56.1 Stmt. ¶ 15; Schattinger Aff. ¶ 12.) DOCS does not serve a strictly Kosher vegetarian diet. (Defs. Rule 56.1 Stmt. ¶ 16; Johnston Aff. ¶ 10; Schattinger Aff. ¶ 12.)

---

[2]    Certain inmates at Green Haven Correctional Facility eat hot Kosher meals through the Pilot Kosher Food Program, described below.

[3]    The individual facilities may package the Kosher food received from Oneida with other food that can be prepared in a Kosher manner at the individual facility. For example, fruits and vegetables can be prepared in a Kosher manner at individual facilities, whereas meat and dairy products, as well as juices, must be prepared in a central Kosher kitchen and shipped to the individual facilities. (Defs. Rule 56.1 Stmt. ¶¶ 9-12; Schattinger Aff. ¶ 7-8.)

Green Haven Correctional Facility is the only DOCS correctional facility that serves Kosher meals other than the CAD, providing a hot Kosher food menu under the auspices of the Green Haven Pilot Kosher Food Program.[4]  (Defs. Rule 56.1 Stmt. ¶¶ 19-20; Johnston Aff. ¶ 4; Leonard Aff. ¶ 7; Schattinger Aff. ¶ 9; <u>see also</u> Dkt. No. 69: Chill Aff. ¶ 6.)  The food used in the Pilot Kosher Food Program is prepared in Green Haven's Kosher kitchen according to a menu prepared by the Green Haven Food Administrator and the Green Haven Jewish Chaplain, Rabbi Chill.  (Defs. Rule 56.1 Stmt. ¶¶ 23-26; Johnston Aff. ¶¶ 6-8; Chill Aff. ¶¶ 6-7.)  "The Green Haven kosher kitchen prepares hot kosher meals from a different menu than the CAD menu" and "strives to track as closely as possible the menu offered to the general inmate population at DOCS' facilities." (Defs. Rule 56.1 Stmt. ¶ 27; Johnston Aff. ¶ 8; Schattinger Aff. ¶ 9.)

Jewish inmates at Green Haven who do not participate in the Pilot Kosher Food Program receive the CAD.[5]  (Defs. Rule 56.1 Stmt. ¶ 22; Johnston Aff. ¶ 5.)  Like other DOCS facilities, Green Haven offers a vegetarian alternative to the meat entrees on the general population menu, but does not offer a Kosher vegetarian alternative to the meat entrees on the Pilot Kosher Food menu or the CAD (just as other facilities do not offer a Kosher vegetarian alternative to the CAD). (Defs. Rule 56.1 Stmt. ¶¶ 15-16, 28; Johnston Aff. ¶ 9-10.)

---

[4]  "The Green Haven kosher meal program has been in existence since the early 1980s," and pre-existed the introduction of the CAD.  (Defs. Rule 56.1 Stmt. ¶ 21; Schattinger Aff. ¶¶ 10-11.)

[5]  Currently, approximately forty-five Green Haven inmates participate in the Pilot Kosher Food Program and eight Green Haven inmates receive the CAD.  (Defs. Rule 56.1 Stmt. ¶ 29; Chill Aff. ¶ 8.)

**Tafari's Request to Transfer to Green Haven**

    DOCS' Division of Classification and Movement evaluates inmates for placement in DOCS' correctional facilities and determines inmates' transfer requests to other correctional facilities. (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶¶ 31-33; Dkt. No. 73: Jordan Aff. ¶ 4.) The Division considers medical, psychiatric, programming and security needs when placing or transferring an inmate. (Defs. Rule 56.1 Stmt. ¶¶ 32, 34; Jordan Aff. ¶¶ 4, 7.) Inmates may request to transfer to another facility because they prefer to be housed in a particular geographic region, which is known as an "area of preference" transfer. (Defs. Rule 56.1 Stmt. ¶ 35; Jordan Aff. ¶ 8.) To be eligible for an area of preference transfer, a maximum security inmate must be "housed in a DOCS facility for at least one (1) year, must have been at his current facility for at least six (6) months, and must have an acceptable disciplinary record." (Defs. Rule 56.1 Stmt. ¶ 36; Jordan Aff. ¶ 9.) An inmate has an acceptable disciplinary record if he is "not currently serving a keeplock or SHU ('Special Housing Unit') sanction due to disciplinary rule infractions and has not accumulated more than 60 days in keeplock or SHU over the past year." (Defs. Rule 56.1 Stmt. ¶ 36; Jordan Aff. ¶ 9.) Tafari is currently in the SHU at Clinton Correctional Facility, has continuously been in SHU or keeplock confinement since May 2003, and is scheduled to remain in SHU until July 25, 2015. (Defs. Rule 56.1 Stmt. ¶¶ 37-38, 40; Jordan Aff. ¶¶ 13-15.)

    Tafari "made several requests to be transfer[red] to Green Haven to participate in the [Pilot] Kosher Food Program" so "that he can choose a substitute of non-meat items for the meat

items offered on that menu."[6/] (Tafari Reply Aff. ¶ 14; Defs. Rule 56.1 Stmt. ¶¶ 30, 43; Tafari Dep. at 66-67, 75, 79-80; see also Jordan Aff. ¶ 16; Dkt. No. 69: Chill Aff. ¶ 9.) DOCS classified Tafari's requests as area of preference transfer request because Tafari is registered as Jewish and already received Kosher meals in the form of the CAD. (Defs. Rule 56.1 Stmt. ¶ 41; Jordan Aff. ¶ 16.) Tafari's disciplinary record – including "52 Tier II disciplinary proceedings and 53 Tier III disciplinary proceedings over his 21 years of incarceration" – precluded Tafari from eligibility for an area of preference transfer. (Defs. Rule 56.1 Stmt. ¶¶ 42, 44; Jordan Aff. ¶ 17.)

On April 30, 2004, Tafari submitted a formal grievance regarding DOCS' denial of his April 23, 2004 transfer request to participate in Green Haven's Kosher Food Program. (Tafari Reply Aff. Ex. B at 5: 4/30/04 Grievance AUB-42241-04.) On May 14, 2004, Auburn Superintendent John Burge responded to Tafari's grievance, stating that the "Kosher Food Program in question is an Honor Program. An inmate must have at least one (1) year free of Tier Hearing convictions. [Tafari's] disciplinary record makes him ineligible." (Tafari Reply Aff. Ex. B at 7: 5/14/04 Supt. Dec.) Tafari appealed Superintendent Burge's decision stating that "[t]here is no such law indicating that a Jewish [i]nmate must be one year free of [t]ier hearing [c]onvictions in [o]rder

---

[6/]    Tafari believes that Green Haven offers a vegetarian alternative to their hot Kosher meals (see Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 66-67, 79-80), and stated that he wishes to transfer to Green Haven in order to participate in the Pilot Kosher Food Program because the CAD "only provide[s] sandwi[che]s, soup and fresh vegetable[s] and fruits." (Dkt. No. 83: Tafari Reply Aff. ¶¶ 14, 21.) Tafari's opposition to defendants' summary judgment motion asserts that defendants must "amend[] the C.A.D. menu with replacements of meat and/or meat byproducts, and/or transfer[ Tafari] to Green Haven to participate in the kosher food program." (Tafari Reply Aff. ¶ 21.)

to participate in the kosher food program at Green Haven" and that "DOCS is violating [his] [c]onstitutional [r]ights [u]nder the First and Fourthteen [sic] Amendment to Freedom of Religion." (Tafari Reply Aff. Ex. B at 8: Grievance AUB-42241-04 Appeal.)  On July 7, 2004, the Central Office Review Committee ("CORC") upheld  Superintendent Burge's decision, stating that Tafari's "religious and dietary needs are being met at his present facility.  CORC advises [Tafari] to address his transfer concerns to his assigned correction counselor."  (Tafari Reply Aff. Ex. B at 10: 7/7/04 CORC Dec.)

On July 10, 2004, Tafari submitted a formal grievance regarding denial of his July 6, 2004 Green Haven transfer request stating that:

> [the] denial was solely based upon [r]acial discrimination . . . .  It is well documented, that the entire Jewish [i]nmate population at Green Haven C.F. are Europeans, and all Black and Latino Jewish [i]nmates are spread[] out throughout the DOCS facilities subjected to the [c]old [a]lternative [m]eals 3x day, while these European(s) Jewish [i]nmate[]s get the full constitutional right to practice and enjoy the Jewish faith and/or [r]eligion by eating [sic] [h]ot cooked Kosher meals 3x day.

(Tafari Reply Aff. Ex. B at 11-13: 7/10/04 Grievance AUB-42810-04; see also Tafari Reply. Aff. Ex. B at 33-35: 7/15/04 Compl. Addendum.)  On August 13, 2004, Auburn Superintendent Burge denied Tafari's grievance because Tafari's transfer request was submitted by Auburn but "denied by Classification and Movement, not the [Auburn Correctional] facility."  (Tafari Reply Aff. Ex. B at 17: 8/13/04 Supt. Dec.)  On September 29, 2004, CORC upheld Superintendent Burge's decision, noting that Tafari's "transfer request was denied due to his poor custodial adjustment.  CORC also asserts that [Tafari's] religious needs are being accommodated at his current facility, in accordance

with Department policy. Jewish inmates, regardless of race, may request and receive the cold alternative diet." (Tafari Reply Aff. Ex. B at 18: 9/29/04 CORC Dec.)[7]

On September 22, 2004, Tafari wrote Rabbi Matasar at Auburn Correctional Facility, requesting the Rabbi's help in transferring to Green Haven to participate in the Pilot Kosher Food Program. (Tafari Reply Aff. ¶ 17 & Ex. B at 19-20: 9/22/04 Letter.) Rabbi Matasar responded that "transfers are the business of the guidance unit & classification & movement in albany." (Tafari Reply Aff. ¶ 17 & Ex. B at 21: 9/24/04 Letter.)

On December 3, 2006, while housed at Five Points Correctional Facility, Tafari wrote to Senior DOCS Rabbi Arthur Morgenstern requesting help in transferring to Green Haven, copying Rabbi Chill of Green Haven and Rabbi Jacobs of Five Points. (Tafari Reply Aff. ¶ 18 & Ex. B at 22: 12/3/06 Letter.) Assistant Director of Ministerial Services Omega B. Alston responded that "a request for transfer has to be initiated by [Tafari's] Correction Counselor. The transfer request has to be for a specific program need such as for an educational, vocational or treatment program. . . . [DOCS'] Directive 4202, Religious Programs and Practices does not state any transfers for religious purposes." (Tafari Reply Aff. ¶ 18 & Ex. B at 23: 1/23/07 Letter.)[8]

---

[7] Tafari claims that DOCS denied Tafari's transfer request to Green Haven despite twenty months free from "misbehavior reports" while at Auburn Correctional Facility, and that he was instead sent to Eastern Correctional Facility. (Reznik Aff. Ex. B: Tafari Dep. at 75.)

[8] Directive 4202 provides in relevant part:

> **DIETARY CONSIDERATIONS**. Inmates may refrain from eating those food items served to the general population which are contrary to their religious beliefs.
> (continued...)

On December 12, 2006, Tafari submitted a formal grievance alleging that on December 3, 2006, Rabbi Jacobs told Tafari, "I have discussed the [transfer] issue with Rabbi Morgenstern, and Rabbi Chill, and we have determined that [n]iggers are not Jews, therefore, you will never be approved for the Kosher Food Program at Green Haven." (Tafari Reply Aff. ¶ 19 & Ex. B at 24: 12/12/06 Grievance FPT-16281-06.)  On December 21, 2006, Five Points' Acting Superintendent found "no merit to [Tafari's] grievance" because Tafari "offered no evidence or witness testimony to substantiate [Tafari's] allegations.  Rabbi Jacobs indicated he has never made any racial slurs towards" Tafari.  (Tafari Reply Aff. Ex. B at 25: 12/21/06 Supt. Dec.)  On January 31, 2007, CORC upheld the decision, noting that the "employee in question was interviewed by telephone and denied [Tafari's] allegations.  CORC has not been presented with sufficient evidence to substantiate that [Tafari] has been the victim of harassment."  (Tafari Reply Aff. Ex. B at 26: 1/31/07 CORC Dec.)

Rabbi Chill – Green Haven's Jewish Chaplain who oversees the Pilot Hot Kosher Meal Program – has no authority to grant or deny inmates' requests to transfer to Green Haven to participate in the Pilot Kosher Food Program.  (Defs. Rule 56.1 Stmt. ¶ 45; Chill Aff. ¶¶ 2, 10.)

---

[8] (...continued)

> A nutritionally adequate alternate diet shall be provided after validation and verification of the religious need for the alternate diet by the Ministerial Program Coordinator of the faith group or the Director of Ministerial and Family Services and the Assistant Commissioner for Health Services.

(Dkt. No. 75: Leonard Aff. Ex. A: Directive 4202 at 8.)

**Kosher Meals In Transit**

Inmates receive bag lunches – including Kosher bag lunches for Jewish inmates – while in transit between DOCS facilities. (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶¶ 47, 49; Dkt. No. 70: Johnston Aff. ¶ 11; Dkt. No. 71: Schattinger Aff. ¶ 13.) DOCS security personnel are responsible for ordering the correct number of bag lunches for inmates who will be transported, but Jewish inmates "must specifically request a kosher bag lunch from security personnel when they are in transit, so the security personnel can order the kosher bag lunch." (Defs. Rule 56.1 Stmt. ¶¶ 48-49; Johnston Aff. ¶ 11; Schattinger Aff. ¶ 13.) DOCS prefers inmates to request a Kosher bag lunch the night before they are transported, but often inmates request Kosher bag lunches "just prior to the time that the transfer occurs." (Defs. Rule 56.1 Stmt. ¶ 50; Johnston Aff. ¶ 11.)

A Kosher bag lunch typically consists of "a meat or cheese sandwich made with kosher meat or cheese, condiments, chips, a cookie or cake, and juice." (Defs. Rule 56.1 Stmt. ¶ 53; Johnston Aff. ¶ 12.) The food items used to make the CAD at a particular facility are also used by that facility to make Kosher bag lunches. (Defs. Rule 56.1 Stmt. ¶ 54; Johnston Aff. ¶ 12.)

Fasting is an accepted part of the Jewish religion. (Defs. Rule 56.1 Stmt. ¶ 64; Dkt. No. 69: Chill Aff. ¶ 12.) For example, Jews fast on the holidays of Yom Kippur and Tisha B'Av. (Defs. Rule 56.1 Stmt. ¶ 64; Chill Aff. ¶ 12.) When Kosher food is not available, the Jewish faith permits eating non-Kosher food in life threatening situations, or when a person's health of safety would be jeopardized by not eating at all. (Defs. Rule 56.1 Stmt. ¶ 65; Chill Aff. ¶ 12.)

## Denial of Kosher Bag Lunches on January 16 and 20, 2004

On January 16, 2004, Tafari was transported from Clinton Correctional Facility to Downstate Correctional Facility. (Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 32-33.) Tafari received a Kosher breakfast, but Downstate officers did not provide Tafari with a Kosher lunch or Kosher dinner. (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶ 55; Tafari Dep. at 32-33; Dkt. No. 83: Tafari Reply Aff. ¶ 4.)

On January 20, 2004, Tafari was transported from Downstate to Auburn Correctional Facility. (Defs. Rule 56.1 Stmt. ¶ 56; Tafari Dep. at 39-40.) Tafari was not offered, and did not receive, a Kosher breakfast or Kosher lunch, and was instead offered regular, non-Kosher meals, which he refused to accept. (Defs. Rule 56.1 Stmt. ¶ 56; Tafari Dep. at 40-41; Tafari Reply Aff. ¶ 4.) January 20, 2004 was the Martin Luther King Holiday, and "everything [at the facility] was shut down." (Defs. Rule 56.1 Stmt. ¶ 56; Tafari Dep. at 39.)

On January 25, 2006, Tafari submitted a formal grievance regarding, inter alia, the denial of these Kosher bag lunches. (Tafari Reply Aff. ¶ 5.) Tafari's grievance stated that on January 16, 2004, he "requested an alternative [Kosher] meal while on the bus and was denied" and on January 20, 2004, after he boarded the bus, he "again requested that [he] be provided with the Jewish [a]lternative [m]eal, and again was denied." (Tafari Reply Aff. Ex. A at 6-7: 1/25/04 Grievance AUB-41576-04.) On appeal, on April 28, 2004, CORC stated that Tafari "must address his wishes to receive a cold alternative diet, while in transit, with staff prior to leaving the facility and not while in transit." (Tafari Reply Aff. Ex. A at 16: 4/28/04 CORC Dec.)

**Denial of Kosher Bag Lunches on June 20 and 24, 2005**

On June 20, 2005, Tafari was transported from Eastern to Downstate to Clinton Correctional Facilities and was denied a Kosher bag lunch between Downstate and Clinton when the bus stopped at Washington Correctional Facility.[9/] (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶ 57; Tafari Dep. at 44-45; Dkt. No. 83: Tafari Reply Aff. ¶ 6 & Ex. A at 17: Grievance ECF-20896-05.) Tafari requested a kosher bag lunch, but was offered a regular bag lunch, which he did not eat. (Defs. Rule 56.1 Stmt. ¶ 57; Tafari Dep. at 44-45.) Tafari does not allege any physical injury as a result of this incident. (Defs. Rule 56.1 Stmt. ¶ 58; Tafari Dep. at 46.)

On June 28, 2005, Tafari submitted a formal grievance stating that he "advised Downstate C.F. that [he] wanted to be provided with a Kosher meal for lunch, [but he] was told by the Downstate C.F. staff that Washington C.F. provides the lunch once [they] get there. . . . Once reaching Washington C.F., [he] was denied Kosher meals by Washington C.F. staff and told to eat what was in the brown bag, or don't eat at all." (Tafari Reply Aff. ¶ 7 & Ex. A at 17: Grievance ECF-20896-05.) Tafari also stated that he was denied a Kosher lunch on June 24, 2005 by Washington staff when Tafari returned to Eastern via that facility. (Tafari Reply Aff. Ex. A at 18: Grievance ECF-20896-05.)

---

[9/]     During Tafari's deposition, Tafari referred to Washington Correctional Facility as "Great Meadows," another DOCS facility located in the same town as Washington Correctional Facility. (Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 44; see also DOCS Facility Listing, http://www.docs.state.ny.us/faclist.html (last visited May 27, 2008).)

On July 13, 2005, Washington Correctional Facility Food Administrator Mark Walker responded to Tafari's grievance, stating that he:

> had denied [Tafari's] request for a kosher transit lunch. To my knowledge we have never been asked or directed to provide such a meal in the past. . . . I now know that a Jewish inmate requesting a C.A.D. transit lunch, we need to provide the meal. I have requested some direction from Nutritional Services on what should be provided for this meal. . . . I should . . . be able to provide C.A.D. transit lunches when requested by an inmate that is eligible for the meal.

(Tafari Reply Aff. ¶ 7 & Ex. A at 20: 7/13/05 Walker Response Letter.) On July 21, 2005, Downstate Deputy Superintendent Reception/Classification Catherine Jacobsen responded to Tafari's grievance stating that Jacobsen had "followed up with [the] Washington C.F. And you should have received a kosher meal. Washington C.F. [h]as advised me that they are putting things in place to prevent this from happening again in the future." (Tafari Reply Aff. ¶ 8 & Ex. A at 21: 7/21/05 Jacobsen Response Letter.)[10]

On July 25, 2005, Eastern's Superintendent responded to Tafari's grievance stating that an "[i]nvestigation indicates that grievant [Tafari] did not request a cold alternative meal at Downstate Correctional Facility. Grievant did request a cold alternative meal at Washington Correctional Facility; however, one was not provided." (Tafari Reply Aff. Ex. A at 23: 7/25/05 Supt. Dec.) On September 28, 2005, the CORC upheld the Superintendent's decision and

---

[10] On July 8, 2005, Downstate Inmate Grievance Program ("IGP") Supervisor S. Hughes issued an investigative response to Tafari's grievance stating that "C.O. Jarvis provided the information that [Tafari] made no mention of a desire for Kosher food to her, and she was an Officer involved with preparing inmates to draft out on 6/20/05." (Dkt. No. 24: 4/4/07 Johnson Motion to Dismiss Aff. Ex. C at 8: Hughes Investigative Response.)

note[d] from the facility investigation, at Downstate CF, that the Officer involved with preparing the inmates to draft out on 6/20/05 indicates the grievant made no request for a Cold Alternative Meal. . . . CORC also notes that the Draft Sergeant, on 6/24/05, does not recall if the grievant requested a Cold Alternative Meal, however, all requests received in a timely manner are routinely honored.

(Tafari Reply Aff. Ex. A at 24: 9/28/05 CORC Dec.)  CORC also noted "that Clinton CF provides the noon meals for inmates that are changing buses at Washington CF."  (Tafari Reply Aff. Ex. A at 24: 9/28/05 CORC Dec.)

**Denial of Kosher Bag Lunch on July 26, 2005**

On July 26, 2005, Tafari was transferred from Downstate to Elmira Correctional Facility, and requested but was denied a Kosher bag lunch when departing Downstate.  (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶ 59; Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 46-47; Dkt. No. 83: Tafari Reply Aff. ¶ 9.)  Tafari does not allege any physical injury as a result of being denied a Kosher bag lunch.  (Defs. Rule 56.1 Stmt. ¶ 60; Tafari Dep. at 47-48.)  On July 29, 2005, Tafari submitted a formal grievance stating that:

> Sgt. McDonald told [him] that the cook said all [he] can get was 2 cheese sandwicks [sic] for [his] Kosher meal. [He] told the Sgt. that the sandwicks [sic] were not Kosher, and [the Sgt.] told [Tafari] that was all [the] Downstate C.F. cook sent for [him]. [He] did not eat during the ride from Downstate C.F. to Elmira C.F. on July 26th, 2005.

(Tafari Reply Aff. Ex. A at 25: Grievance ECF-20967-05.)  On August 4, 2005, Deputy Supt. Jacobsen responded that she "was advised that [Tafari] received two cheese sandwiches with Kosher cheese" and that "peanut butter and jelly (made with Kosher products) would be more appropriate

for in transit bag lunches. We have put the new procedure into place at Downstate."[11]/ (Tafari Reply

Aff. Ex. A at 26: Jacobsen Response Letter; see also Tafari Reply Aff. ¶¶ 10-11.)

_____On August 24, 2005, Eastern's Superintendent responded to Tafari's grievance stating

that the "[i]nvestigation indicates that grievant [Tafari] was not provided with a kosher meal while

in transit status on 7/26/05. Appropriate staff have been spoken to as to insure that grievant is

provided with an appropriate meal in the future." (Dkt. No. 24: 4/4/07 Johnson Motion to Dismiss

Aff. Ex. D at 2: 8/24/05 Sup. Dec.) Tafari appealed the Superintendent's decision and on October

19, 2005, CORC responded:

--------

[11]/    On January 3, 2008, Tafari informed the Court that Downstate had resolved any problems
in providing Kosher transit meals in the future:

THE COURT: . . . I take it from our prior conference that the kosher meals
in transit issue is largely resolved or is completely resolved going forward.

MR. TAFARI: It's largely resolved . . . . Paul Annetts has already spoken
with the rabbi at Downstate and they are implementing only at Downstate. All I was
requesting is that because Paul Annetts is in charge of the whole transportation of
DOCS, he should go to central office and stress to them that that is what it is for
kosher inmates or just me . . . .

. . . .

THE COURT: It appears . . . that there is a peanut butter and jelly sandwich
that is kosher that's made available for the bag lunch. Is that correct, Mr. Tafari?

MR. TAFARI: Yes, sir. Defendant Paul Annetts, superintendent of
Downstate, had implemented at Downstate as a result of this complaint. He went to
the rabbi in his facility and the rabbi said that's what they are going to get in transit.
They only implemented at Downstate [but not if] I leave from any other facility.

(Dkt. No. 81: 1/3/08 Conf. Tr. at 12-13.)

CORC notes that Sgt. M . . . at Downstate CF has gone on record to state that a Cold Alternative Diet lunch was secured for the grievant on [7]/26/05 even though the grievant's diet status could not be verified at that time. CORC further notes that the grievant did not eat the lunch as he did not consider the two cheese sandwiches to be kosher.

Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by the employees referenced in this complaint. CORC notes that no corrective action is deemed necessary at this time.

(4/4/07 Johnson Motion to Dismiss Aff. Ex. D at 1: 10/19/05 CORC Dec.)

### Denial of Kosher Bag Lunch on September 26, 2005

On September 26, 2005, Tafari was transported from Downstate to Elmira Correctional Facility and was denied a Kosher bag lunch while in transit. (Dkt. No. 67: Defs. Rule 56.1 Stmt. ¶ 61; Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 48-49; Dkt. No. 83: Tafari Reply Aff. ¶ 12.) On October 3, 2005, Tafari submitted a formal grievance stating that prior to boarding the bus, he "informed the two (2) officers that [he] wanted Kosher lunch on the bus [and] then informed the Draft Room Sgt. and Lt. that [he] wanted Kosher lunch on the bus. When the bus stopped at Elmira C.F., the transportation supervisor told [him] that no Kosher meal was sent for [him]." (Tafari Reply Aff. Ex. A at 28: Grievance ECF-21140-05.) Tafari alleges no physical injury as a result of being denied a Kosher bag lunch. (Defs. Rule 56.1 Stmt. ¶ 62; Tafari Dep. at 49.)

On October 12, 2005, Deputy Supt. Jacobsen responded to Tafari's grievance by apologizing that Tafari did not receive a kosher meal while in transit and "suggest[ed] in the future that [Tafari] alert security earlier regarding [Tafari's] meal requirement." (Tafari Reply Aff. ¶ 13 & Ex. A at 31: 10/12/05 Jacobsen Response Letter.) On November 10, 2005, Elmira Deputy Supt. for

Administrative Services William J. Hopkins responded to Tafari' grievance by stating that Elmira administrators "have no way of verifying the accuracy of [Tafari's] complaint," but that they "have a policy that enables [them] to provide for the dietary needs of inmates in transit . . . ." (Tafari Reply Aff. Ex A at 32: 11/10/05 Hopkins Response Letter.) Deputy Supt. Hopkins also stated that "[i]f [Tafari's] complaint is true and [Tafari] did request the CAD meal and [was] denied it, you have our humble apologies." (Id.)

On October 31, 2005, the Superintendent responded to Tafari's grievance by stating that Elmira staff "have been advised of proper procedure to provide C.A.D. to in[]transit inmates. Every effort will be made to insure C.A.D. is provided." (Tafari Reply Aff. Ex. A at 34: 10/31/05 Supt. Dec.) On December 7, 2005, CORC upheld the Superintendent's decision and "note[d] that Downstate CF had no record of the grievant requesting a cold alternative diet trip bag." (Tafari Reply Aff. Ex. A at 35: 12/7/05 CORC Dec.)[12/]

Tafari stated at his deposition that he is not seeking money damages for the five instances of denial of a Kosher meal while in transit. (Dkt. No. 68: Reznik Aff. Ex. B: Tafari Dep. at 93.)

---

[12/]    CORC added:

> CORC advises the grievant that requests for a cold alternative diet, while on extended out-to-court status, should be submitted to the Deputy Superintendent for Programs, for approval. The grievant may have missed a cold alternative diet meal during the approval process.

(Id.)

**Procedural History**

On April 5, 2007, defendants moved to dismiss on several grounds. (Dkt. No. 25: Notice of Motion.) While that motion was pending, defendants filed a letter brief requesting that "[p]laintiff's claims that accrued in correctional facilities outside of the Southern District of New York ['S.D.N.Y.'] and that involve defendants other than those residing within the Southern District should be severed and transferred to those districts." (Dkt. No. 52: Reznik 8/30/07 Ltr. at 2.)

On October 15, 2007, this Court granted defendants' request to sever and transfer Tafari's claims that "'accrued in correctional facilities outside of the Southern District of New York . . . and that involve defendants other than those residing within the Southern District . . . .'"[13] Tafari v. Annets, 06 Civ. 11360, 2007 WL 2994367 at *1, 9-11 (S.D.N.Y. Oct. 15, 2007) (Peck, M.J.). This Court and Judge Daniels granted defendants' motion to dismiss as to all claims against Southern District defendants, except for Tafari's claims "relating to the denial of Kosher meals in transit on January 16 and 20, 2004, June 20, 2005, July 26, 2005, and September 26, 2005." Tafari v. Annets, 2007 WL 2994367 at *1, 18-19. This Court and Judge Daniels later granted Tafari's reconsideration motion and reinstated Tafari's claim against defendant Rabbi Chill for denying

---

[13] Judge Daniels adopted this Court's Report and Recommendation on defendants' motion to dismiss, but instead of separately transferring claims to the Western and Northern Districts of New York, transferred all the non-S.D.N.Y. claims to the Northern District, leaving that District to "determine whether efficiency warrants any further severance and transfer to the Western District." Tafari v. Annets, 06 Civ. 11360, 2008 WL 536222 at *3 n.2 (S.D.N.Y. Feb. 25, 2008).

Tafari's request to transfer to Green Haven.[14/] (See Dkt. No. 56: 10/29/07 Judge Peck Order; Tafari v. Annets, 06 Civ. 11360, 2008 WL 591804 at *1 (S.D.N.Y. Mar. 3, 2008).) After the completion of discovery, defendants moved for summary judgment on the remaining Southern District claims. (Dkt. No. 65.)

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may

---

[14/]    This Court previously dismissed all claims against defendant Rabbi Chill because Tafari failed to allege any facts demonstrating that Rabbi Chill "was personally involved in denying [Tafari] his alleged constitutional rights concerning a transfer to Green Haven." Tafari v. Annets, 2007 WL 2994367 at *14-16.

discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[15/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source

---

[15/] See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See</u>, <u>e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See</u>, <u>e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." <u>Salahuddin</u> v. <u>Coughlin</u>, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); <u>see</u>, <u>e.g.</u>, <u>McPherson</u> v. <u>Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[16/] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

---

[16/]     <u>See also</u>, <u>e.g.</u>, <u>Ferran</u> v. <u>Town of Nassau</u>, 471 F.3d 363, 369 (2d Cir. 2006); <u>Fuller</u> v. <u>Armstrong</u>, 204 Fed. Appx. 987, 988 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 209 (2007);
                                                 (continued...)

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[17/]

## II. SUMMARY JUDGMENT SHOULD BE GRANTED TO RABBI CHILL ON TAFARI'S GREEN HAVEN TRANSFER CLAIM BECAUSE RABBI CHILL LACKED PERSONAL INVOLVEMENT

### A. Legal Standard

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord, e.g., Warheit v. City of N.Y., No. 06-4463, 2008 WL 904777 at *3 (2d Cir. Apr. 3, 2008); Dyno v. Village of Johnson City, 240 Fed. Appx. 432, 434 (2d Cir. 2007), cert. denied, 128 S. Ct. 1874 (2008); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006);

---

[16/]    (...continued)
Gildor v. United States Postal Serv., 179 Fed. Appx. 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dept., 46 Fed. Appx. 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[17/]    See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 Fed. Appx. 740 (2d Cir. 2002).

Gill v. Tuttle, 93 Fed. Appx. 301, 302 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093, 125 S. Ct. 971 (2005).[18]

"The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d at 873.[19]

---

[18] See, e.g., Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Allan v. Woods, No. 05-CV-1280, 2008 WL 724240 at *5 (N.D.N.Y. Mar. 17, 2008) ("Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability."); Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions.").

[19] Accord, e.g., Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007); Ziemba v. Clark, 167 Fed. Appx. 831, 833 (2d Cir. 2006); Samuels v. Selsky, 166 Fed. Appx. 552, 556 (2d Cir. 2006); Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d at 127; Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003); Hernandez v. Keane, 341 F.3d at 145; Wright v. Smith, 21 F.3d at 501; see also, e.g., Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

**B.     Application of the Legal Standard**

Rabbi Chill unequivocally swore in his affidavit that he has no authority to grant or deny inmates' requests to transfer to Green Haven to participate in the Pilot Kosher Food Program. (See page 9 above.)   Rather, inmate transfer requests are determined by DOCS' Division of Classification and Movement.  (See page 5 above.)  DOCS' responses to Tafari's grievances over the denial of his transfer request document that the decisions were made by the Division of Classification and Movement.  (See pages 6-9 above.)

Tafari's only allegation of Rabbi Chill's involvement is his assertion that Rabbi Jacobs told Tafari that he had consulted with Rabbis Morgenstern and Chill, "and we have determined that niggers are not Jews, therefore, you will never be approved for the Kosher Food Program at Green Haven."  (See page 9 above.)[20]

Assuming for purposes of this motion that Rabbi Jacobs made this abhorrent statement (and even assuming that it accurately reflected Rabbi Chill's views), it does not suffice to prove Rabbi Chill's involvement in the denial of Tafari's transfer request.  Tafari has not offered any evidence that Rabbi Chill (or any other DOCS Rabbi) had the authority to approve (or reject) Tafari's transfer request to Green Haven for the Kosher Food Program.  Rabbi Chill's affidavit stating that he had no authority to grant or deny inmates' transfer requests to Green Haven for the Kosher Food Program, and evidence that transfer decisions are made by DOCS' Division of Classification and Movement, stand uncontradicted.  Tafari's claim that Rabbi Chill was involved in the denial of his

---

[20]     Rabbi Jacobs denied making this statement.  (See page 9 above.)

transfer is vague and conclusory and does not allege that Rabbi Chill had any authority to approve (or reject) a transfer request. Tafari's claim against Rabbi Chill over the denial of Tafari's request to transfer to Green Haven should be denied for Rabbi Chill's lack of personal involvement. E.g., Bratton v. Goord, No. 02CV185, 2006 WL 5564143 at *5 (N.D.N.Y. May 23, 2006) (Summary judgment for defendants' regarding plaintiff's incarceration at a particular correctional facility where defendants' were not personally involved in decision to incarcerate or transfer plaintiff and had no authority to do so.); see, e.g., Gaston v. Coughlin, 249 F.3d 156, 166 (2d Cir. 2001) (Affirming summary judgment for prison employees who were not assigned to the prison during the time period in which the plaintiff was allegedly exposed to inhumane conditions, since plaintiff "has not asserted any personal involvement by those defendants."); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (Affirming summary judgment for DOCS' Commissioner for lack of personal involvement where his only role in confining plaintiff to administrative segregation was to refer plaintiff's administrative segregation hearing appeal to defendant Selsky for decision and to later inform plaintiff that defendant Selsky had rendered a decision.); Stevens v. Goord, 535 F. Supp. 2d 373, 389 (S.D.N.Y. 2008) (Summary judgment for high level prison administrator defendants who were not personally involved in decisions regarding plaintiff's medical care.); Anderson v. Ford, No. 06CV1968, 2007 WL 3025292 at *7 (D. Conn. Oct. 16, 2007) (Summary judgment for four wardens who were not personally involved in denying proper medical care when wardens had no "authority to order surgery or other sought-after treatment."); Persad v. Savage, No. 02-CV-336, 2004 WL 1570286 at *7 (W.D.N.Y. May 25, 2004) (Summary judgment for defendants where plaintiff submitted only a

"conclusory allegation" that defendant violated plaintiff's First Amendment rights in upholding a

CORC decision, but defendant could not have been personally involved because she is "not a voting

member of the CORC, and merely is the custodian of the records."), report & rec. adopted, 2004 WL

1858140 (W.D.N.Y. Aug. 19, 2004).[21]

---

[21]    See also, e.g., McFadden v. Goord, No. 97-2903, 172 F.3d 38 (table), 1999 WL 65141 at *1 (2d Cir. Feb. 8, 1999) (Noting "that [plaintiff]'s complaint contains only minimal, vague, and (in places) conclusory references to (a) the culpable acts taken by all defendants other than [two] and (b) the personal involvement of [three supervisory] defendants."); Hemmings v. Gorczyk, 134 F.3d 104, 109 n.4 (2d Cir. 1998) (Where plaintiff's "complaint contains only minimal and vague references to the personal involvement of the various State Defendants," instructing that the "district court should require [plaintiff] to file a new amended complaint . . . specifying the acts of which he complains as to each of the State Defendants. If, as to any such defendant, [plaintiff] fails to include an allegation which, if proven, would permit a reasonable trier of fact to infer that that individual was personally involved in the deliberate indifference to his medical needs, the district court may dismiss the complaint as to that individual."); Odom v. N.Y.S. Dep't of Corr. Servs., No. 94-2746, 122 F.3d 1057 (table), 1995 WL 595550 at *2 (2d Cir. Sept. 22, 1995) (Plaintiff's "complaint contains broad and conclusory allegations that [three defendants] failed in performing their supervisory functions, but it does not include any allegation that these defendants participated directly in any constitutional violation. Accordingly, the district court properly dismissed [plaintiff]'s complaint for failure to state a claim against [those three defendants] in their individual capacities."); Schwartz v. Dennison, 518 F. Supp. 2d 560, 573 n.11 (S.D.N.Y. 2007) ("Plaintiff's claims against [two defendants] fail for the additional reason that [plaintiff] has failed to adequately allege their personal involvement. . . . There are no allegations in the complaint from which it can be reasonably inferred that [the two defendants] created, or allowed to continue, a[n unconstitutional] policy."); Perri v. Bloomberg, No. 06-CV- 403, 2007 WL 2891332 at *9 (E.D.N.Y. Sept. 28, 2007) (Granting motion to dismiss for lack of personal involvement because although "[p]laintiff contends that '[a]ll of the defendants were personally involved in the violation of [his] constitutional rights on the date and time in question,' . . . he alleges no facts regarding these defendants' personal involvement [and his] allegations . . . are wholly conclusory."); Barnes v. Henderson, 490 F. Supp. 2d 313, 319 (W.D.N.Y. 2007) ("[P]laintiff's complaint also contains nothing more than his conclusory, barely coherent assertion that Selsky 'act[ed] in cohoot [sic] with his co-working.' . . . That is simply not enough to show personal involvement on Selsky's part."); Walsh v. Goord, No.
                                                                                        (continued...)

The Court should grant defendants' summary judgment motion and dismiss Tafari's

claim against defendant Rabbi Chill arising from Tafari's request to be transferred to Green Haven

for the Kosher Food Program.

## III. TAFARI HAS FAILED TO ESTABLISH A CLAIM UNDER THE FIRST AMENDMENT'S FREE EXERCISE CLAUSE OR RLUIPA REGARDING HIS DENIAL OF KOSHER MEALS IN TRANSIT BETWEEN CORRECTIONAL FACILITIES[22]/

---

[21]/    (...continued)
07-CV-0246, 2007 WL 1572146 at *5 n.2 (W.D.N.Y. May 23, 2007) ("If plaintiff can allege in factual non-conclusory terms that other persons were personally involved in the alleged due process violation, plaintiff's amended complaint may include them as defendants."); Scaggs v. New York Dep't of Educ., No. 06-CV-0799, 2007 WL 1456221 at *18 (E.D.N.Y. May 16, 2007) ("In plaintiffs' blanket allegations of supervisory liability against *all* defendants, they fail to indicate personal involvement by any of the named defendants. The complaint does not indicate the role of such defendants in failing to prevent constitutional violations. . . . Plaintiffs' conclusory allegations are insufficient to plead Section 1983 claims of supervisory liability as to the individually-named defendants."); Graham v. Poole, 476 F. Supp. 2d 257, 261 (W.D.N.Y. 2007) ("Plaintiff's conclusory allegation that Poole failed to provide him with adequate medical care is also insufficient to state a claim."); Young-Flynn v. Wright, 05 Civ. 1488, 2007 WL 241332 at *21 (S.D.N.Y. Jan. 26, 2007) ("[E]ven reading Plaintiff's allegations in the light most favorable to him, they are insufficient to show that defendants Wright, Stone and Fischer were personally involved in the alleged violations. With respect to defendant Wright, Plaintiff makes absolutely no allegations in his Amended Complaint regarding the role of this defendant in any challenged conduct. Further, although, in his additional submissions, Plaintiff calls Wright the 'ring leader' . . . , Plaintiff's allegation in this regard is wholly conclusory. As such, it cannot withstand Defendants' motion to dismiss.").

[22]/    Tafari also claims, generally, that defendants have violated Tafari's Eighth Amendment rights. (See Dkt. No. 83: Tafari Reply Br.) The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct that offends "evolving standards of decency." E.g., Hudson v. McMillan, 503 U.S. 1, 5, 8, 112 S.Ct. 995, 998, 1000 (1992); Wilson v. Seiter, 501 U.S. 294, 297, 308, 111 S.Ct. 2321, 2323, 2329 (1991); Estelle v. Gamble, 429
(continued...)

Tafari claims that his right to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[23/] was violated when DOCS

---

[22/]    (...continued)
U.S. 97, 102, 104-05, 97 S.Ct. 285, 290, 291 (1976); <u>Gregg</u> v. <u>Georgia</u>, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925 (1976). To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with "deliberate indifference" to the inmate's serious medical needs. E.g., <u>Helling</u> v. <u>McKinney</u>, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480 (1993); <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. at 104-05, 97 S.Ct. at 291. "Ordinarily the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials retain considerable discretion in determining dietary constituents," subject to First Amendment freedom of religion considerations. <u>Johnson</u> v. <u>Guiffere</u>, No. 04-CV-57, 2007 WL 3046703 at *4 (N.D.N.Y. Oct. 17, 2007); <u>see also</u>, <u>e.g.</u>, <u>Word</u> v. <u>Croce</u>, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001). Tafari provides no evidence that DOCS officials inflicted any pain or endangered Tafari in any way, even for a moment, in denying Tafari Kosher meals on a limited number of occasions while traveling between facilities. (<u>See</u> pages 10-17 above.) Tafari's Eighth Amendment claim, therefore, is nothing more than a restatement of his First Amendment claim, and will not be separately discussed.

[23/]    Tafari's complaint did not refer to RLUIPA (<u>see generally</u> Dkt. No. 38: Compl.); Tafari first raised RLUIPA claims in his opposition to defendants' summary judgment motion (<u>see</u> Dkt. No. 83: Tafari Reply Aff. ¶ 2). When reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel. <u>See</u>, <u>e.g.</u>, <u>LaBounty</u> v. <u>Adler</u>, 933 F.2d 121, 123 (2d Cir.1991); <u>Watson</u> v. <u>McGinnis</u>, 964 F. Supp. 127, 131 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.); <u>see also</u>, cases cited at pages 21-23 above. The Court therefore will consider Tafari's free exercise claims under both the First Amendment <u>and</u> RLUIPA because of Tafari's pro se status and RLUIPA's applicability to Tafari's claims. <u>See</u>, <u>e.g.</u>, <u>McEachin</u> v. <u>McGuinnis</u>, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (considering RLUIPA claim although not raised in complaint, because facts in complaint supported RLUIPA claim); <u>Smith</u> v. <u>Nuttal</u>, No. 04-CV-0200, 2007 WL 837111 at *3 & n.5 (W.D.N.Y. Mar. 14, 2007) ("Although Plaintiff does not specifically identify RLUIPA as a legal predicate for his § 1983 claim, given Plaintiff's <u>pro se</u> status and the RLUIPA's applicability to Plaintiff's claim, the court construes the Complaint as asserting a violation of the RLUIPA."); <u>but see</u>, <u>Abdur-Raqiyb</u> v. <u>Erie County Medical Center</u>, 536 F. Supp. 2d 299 (W.D.N.Y. 2008) ("Finally, I note that in his papers in opposition to defendants' motions, (continued...)

denied Tafari Kosher meals while in transit between DOCS correctional facilities on five occasions. (Tafari Reply Aff. ¶¶ 2, 4-10, 12-13; Tafari Reply Br. at 1-4.)[24] Defendants argue that Tafari's free exercise claims fail because defendants reasonably accommodated Tafari's religious beliefs, because the State's conduct does not "'substantially burden . . . sincerely held religious beliefs,'" and because any possible burden Tafari suffered was de minimis. (Dkt. No. 72: State Br. at 9-15.)

      **A.**    **Legal Standard**

Courts have long understood that prisoners retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.") (citations omitted); Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); Ford v.

---

[23]     (...continued)
plaintiff attempts, for the first time, to assert claims under the Religious Land Use and Institutionalized Persons Act . . . . Plaintiff may not, however, assert a claim for the first time in his papers opposing defendants' motion for summary judgment."); Ochoa v. Connell, No. 05-CV-1068, 2007 WL 3049889 at *6 n.9 (N.D.N.Y. Oct. 18, 2007) (Plaintiff's complaint does not refer to RLUIPA, "and thus we only consider his free exercise claim under the First Amendment.").

[24]     It is undisputed that Tafari is registered with DOCS as Jewish and that he requires Kosher meals. (See page 2 above.) Tafari does not claim that the Kosher meal DOCS provides to Jewish inmates in transit are inadequate; rather, he claims only that he was denied Kosher meals in transit on a limited number of occasions. (See pages 10-17 above.)

McGinnis, 352 F.3d 582, 588 (2d Cir. 2003); Jackson v. Mann,196 F.3d 316, 320 (2d Cir. 1999)

("Prisoners retain their right to religious freedom even when incarcerated."); Jackson-Bey v.

Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997) ("[I]nmates are not stripped of their constitutional

rights simply by virtue of their imprisonment, including their right to religious freedom.") (citation

omitted).[25/]

       Since 1975 this Circuit has consistently recognized that the free exercise of religion

includes "the right of prisoners to receive diets consistent with their religious scruples."  Kahane v.

Carlson, 527 F.2d 492, 495-96 (2d Cir. 1975) (denial of Kosher food to a Jewish inmate is not

justified by an important or substantial governmental objective); see, e.g., McEachin v. McGuinnis,

357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food

that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.  This

principle was established in our circuit at least as early as 1975."); Ford v. McGinnis, 352 F.3d at

597 (Second Circuit decisions "have clearly established that a prisoner has a right to a diet consistent

with his or her religious scruples."); Jackson v. Mann,196 F.3d at 320; Bass v. Coughlin, 976 F.2d

98, 99 (2d Cir. 1992) ("At least as early as 1975, it was established that prison officials must provide

---

[25/]      See also, e.g., Abdul-Matiyn v. Pataki, No. 06-CV-1503, 2008 WL 974409 at *11 (N.D.N.Y. Apr. 8, 2008); Withrow v. Taylor, No. 05-CV-1129, 2007 WL 3274858 at *16 (S.D.N.Y. Nov. 5, 2007); Mack v. Griffin, No. 04-CV-588, 2006 WL 2792736 at *9 (N.D.N.Y. Sept. 27, 2006); Davidson v. Murray, No. 92-CV-0283, 2005 WL 1123756 at *3 (W.D.N.Y. May 10, 2005) ("An inmate is therefore entitled to a reasonable accommodation of his or her religious beliefs, including religious dietary practices."); Davis v. City of New York, 142 F. Supp. 2d 461, 463 (S.D.N.Y. 2001); Higgins v. Davis, 95 Civ. 3011, 2001 WL 262930 at *4 (S.D.N.Y. Mar. 15, 2001); Reynolds v. Goord, 103 F. Supp. 2d 316, 335 (S.D.N.Y. 2000); Ali v. Szabo, 81 F. Supp. 2d 447, 469 (S.D.N.Y. 2000) (Peck, M.J.).

a prisoner a diet that is consistent with his religious scruples.  <u>Kahane</u> has never been overruled and

remains the law.") (citation to <u>Kahane</u> omitted); <u>Benjamin</u> v. <u>Coughlin</u>, 905 F.2d 571, 574, 579 (2d

Cir.), <u>cert. denied</u>, 498 U.S. 951, 111 S. Ct. 372 (1990); <u>Moorish Science Temple of America, Inc.</u>

v. <u>Smith</u>, 693 F.2d 987, 990 (2d Cir. 1982) ("[T]he denial of kosher food to a Jewish inmate is not

justified by an important or substantial governmental objective.").[26]

      "'Balanced against the constitutional protections afforded prison inmates, including

the right to free exercise of religion, [however,] are the interests of prison officials charged with

complex duties arising from administration of the penal system.'" <u>Ford</u> v. <u>McGinnis</u>, 352 F.3d at 588

(quoting <u>Benjamin</u> v. <u>Coughlin</u>, 905 F.2d at 574); <u>see</u>, <u>e.g.</u>, <u>O'Lone</u> v. <u>Estate of Shabazz</u>, 482 U.S.

at 348-49, 107 S. Ct. at 2404; <u>Pell</u> v. <u>Procunier</u>, 417 U.S. at 822, 94 S. Ct. at 2804; <u>Jackson-Bey</u> v.

<u>Hanslmaier</u>, 115 F.3d at 1096.[27]  A prison inmate retains First Amendment rights "that are not

---

[26]    See also, <u>e.g.</u>, <u>Abdul-Matiyn</u> v. <u>Pataki</u>, 2008 WL 974409 at *12; <u>Wesley</u> v. <u>Muhammad</u>, 05
Civ. 5833, 2008 WL 236974 at *1 (S.D.N.Y. Jan. 28, 2008); <u>Johnson</u> v. <u>Guiffere</u>, No.
04-CV-57, 2007 WL 3046703 at *4 (N.D.N.Y. Oct. 17, 2007) ("Undeniably, the reach of the
First Amendment's free exercise clause extends beyond mere attendance at congregate
religious services into other aspects of prison life including, pertinently, that of an inmate's
diet and participation in religious meals."); <u>Amaker</u> v. <u>Goord</u>, 98 Civ. 3634, 2002 WL
523371 at *10 (S.D.N.Y. Mar. 29, 2002); <u>Ford</u> v. <u>McGinnis</u>, 00 Civ. 3437, 2000 WL
1808729 at *4 (S.D.N.Y. Dec. 11, 2000); <u>Majid</u> v. <u>Wilhelm</u>, 110 F. Supp. 2d 251, 258
(S.D.N.Y. 2000); <u>Wesley</u> v. <u>Kalos</u>, 97 Civ. 1598, 1997 WL 767557 at *3 (S.D.N.Y. Dec. 11,
1997); <u>Ross</u> v. <u>Coughlin</u>, 669 F. Supp. 1235, 1241-42 (S.D.N.Y. 1987).

[27]    See also, <u>e.g.</u>, <u>Anderson</u> v. <u>Duke</u>, No. 04-CV-0030, 2008 WL 238557 at *4 (N.D.N.Y.
Jan. 28, 2008) ("The task of defining the contours of [First Amendment] right[s] in a prison
setting requires careful balance of the rights of prison inmates against the legitimate interest
of prison officials tasked with maintaining prison security."); <u>Ochoa</u> v. <u>Connell</u>, 2007 WL
3049889 at *6; <u>Keesh</u> v. <u>Smith</u>, No. 04 CV 0779, 2006 WL 516793 at *4 (N.D.N.Y. Mar. 2,
                                                              (continued...)

inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell</u> v. <u>Procunier</u>, 417 U.S. at 822, 94 S.Ct. at 2804; <u>accord, e.g.</u>, <u>Shakur</u> v. <u>Selsky</u>, 391 F.3d 106, 113 (2d Cir. 2004); <u>Giano</u> v. <u>Senkowski</u>, 54 F.3d 1050, 1053 (2d Cir.1995).[28/]

The standard to determine whether a prison official's conduct violates an inmate's First Amendment free exercise rights is "one of reasonableness, taking into account whether the particular [act] affecting [the] right . . . is 'reasonably related to legitimate penological interests.'" <u>Benjamin</u> v. <u>Coughlin</u>, 905 F.2d at 574; <u>accord, e.g.</u>, <u>O'Lone</u> v. <u>Estate of Shabazz</u>, 482 U.S. at 349, 107 S. Ct. at 2404-05; <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d 263, 274 (2d Cir. 2006); <u>Young</u> v. <u>Coughlin</u>, 866 F.2d 567, 569 (2d Cir.), <u>cert. denied</u>, 492 U.S. 909, 109 S. Ct. 3224 (1989); <u>see also, e.g.</u>, <u>Ford</u> v. <u>McGinnis</u>, 352 F.3d at 588 ("The free exercise claims of prisoners are . . . judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.") (internal quotations omitted).

---

[27/]     (...continued)
2006); <u>Davidson</u> v. <u>Murray</u>, 2005 WL 1123756 at *3; <u>Persad</u> v. <u>Savage</u>, No. 02-CV-336, 2004 WL 1570286 at *3 (W.D.N.Y. May 25, 2004), <u>report & rec. adopted</u>, 2004 WL 1858146 (W.D.N.Y. Aug. 19, 2004); <u>Cole</u> v. <u>Artuz</u>, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999).

[28/]     <u>See, e.g.</u>, <u>Kahane</u> v. <u>Carlson</u>, 527 F.2d at 498; <u>Allan</u> v. <u>Woods</u>, No. 05-CV-1280, 2008 WL 724240 at *6-7 (N.D.N.Y. Mar. 17, 2008) (The right "'to freely exercise a chosen religion . . . is not limitless, and may be subject to restrictions relating to legitimate penological concerns."); <u>Withrow</u> v. <u>Taylor</u>, 2007 WL 3274858 at *16; <u>Singh</u> v. <u>Goord</u>, 520 F. Supp. 2d 487, 507 (S.D.N.Y. 2007) ("Policies and practices which serve legitimate penological interests do not offend the Free Exercise clause."); <u>Mitchell</u> v. <u>Goord</u>, No. 06-CV-6197, 2007 WL 925540 at *2 (W.D.N.Y. Mar. 23, 2007); <u>Salahuddin</u> v. <u>Perez</u>, 99 Civ. 10431, 2006 WL 266574 at *7 (S.D.N.Y. Feb. 2, 2006); <u>Reynolds</u> v. <u>Goord</u>, 103 F. Supp. 2d at 335.

In evaluating the constitutionality of a restriction[29] on an inmate's religious rights,

four factors are considered:

"1) whether there is a rational relationship between the regulation and the legitimate
government interests asserted; 2) whether the inmates have alternative means to exercise the
right; 3) the impact that accommodation of the right will have on the prison system; and
4) whether ready alternatives exist which accommodate the right and satisfy the
governmental interest."

Salahuddin v. Coughlin, 993 F.2d 306, 308-09 (2d Cir. 1993) (quoting Benjamin v. Coughlin, 905

F.2d at 574); accord, e.g., Salahuddin v. Goord, 467 F.3d at 274; United States v. El-Hage, 213 F.3d

74, 81 (2d Cir.), cert. denied, 531 U.S. 881, 121 S. Ct. 193 (2000).[30] "In this analysis, we give

deference to defendants because 'prison administrators . . . and not the courts, [are] to make the

---

[29] This Circuit examines individual decisions that deny or curtail inmates' religious freedom
under the same four factors under which it examines official prison regulations or rules. See,
e.g., Salahuddin v. Goord, 467 F.3d at 274 n.4 ("An individualized decision to deny a
prisoner the ability to engage in religious exercise is analyzed in the same way as a prison
regulation denying such exercise."); Ford v. McGinnis, 352 F.3d at 595 n.15 ("Although
Turner and O'Lone concerned the reasonableness of prison regulations, we have previously
suggested that the analysis is the same as to an individual decision to deny a prisoner the
ability to engage in some requested religious practice."); Allan v. Woods, 2008 WL 724240
at *7; Withrow v. Taylor, 2007 WL 3274858 at *17; Johnson v. Guiffere, No. 04-CV-57,
2007 WL 3046703 at *5 n.8 (N.D.N.Y. Oct. 17, 2007); Sproul v. Goord, No. 05-CV-0075,
2007 WL 2609787 at *11 n.12 (N.D.N.Y. Sept. 5, 2007); Allah v. Poole, 506 F. Supp. 2d
174, 181 n.6 (W.D.N.Y. 2007); see also, e.g., Boles v. Neet, 486 F.3d 1177, 1181 n.4 (10th
Cir. 2007); Street v. Maloney, No. 92-1822, 991 F.2d 786 (table), 1993 WL 125396 at *3
(1st Cir. Apr. 23, 1993).

[30] See also, e.g., Graham v. Mahmood, 05 Civ. 10071, 2008 WL 1849167 at *12 (S.D.N.Y.
Apr. 22, 2008); Rahman v. Goord, No. 04-CV-6368, 2007 WL 1299408 at *5 (W.D.N.Y.
May 3, 2007); Villar v. Thompson, 01 Civ. 0190, 2002 WL 928849 at *1 (S.D.N.Y. May 8,
2002); Ali v. Szabo, 81 F. Supp. 2d at 470; Salahuddin v. Coughlin, 999 F. Supp. 526, 535
(S.D.N.Y 1998) (Peck, M.J.).

difficult judgments concerning institutional operations.'"  Graham v. Mahmood, 2008 WL 1849167

at *12; see also, e.g., Fromer v. Scully, 874 F.2d 69, 73 (2d Cir. 1989); Anderson v. Coughlin, 757

F.2d 33, 35 (2d Cir. 1985) (this deference, however, is "by no means unlimited"); Byrd v. Goord,

00 Civ. 2135, 2005 WL 2086321 at *6 (S.D.N.Y. Aug. 29, 2005) (Daniels, D.J.).

As in other areas of the law, a burden shifting approach applies:

> The prisoner must show at the threshhold that the disputed conduct
> substantially burdens his sincerely held religious beliefs.  The defendants then bear
> the relatively limited burden of identifying the legitimate penological interests that
> justify the impinging conduct; "the burden remains with the prisoner to 'show that
> these [articulated] concerns were irrational.'"

Salahuddin v. Goord, 467 F.3d at 274-75 (citations & fn. omitted); accord, e.g., Johnson v. Guiffere,

2007 WL 3046703 at *5; Sproul v. Goord, 2007 WL 2609787 at *11.

RLUIPA claims are similar to First Amendment free exercise claims, although

RLUIPA "proceeds under a slightly different framework," protecting "inmates by providing that a

government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain

institutions unless the government shows that the burden furthers a compelling governmental interest

by the least restrictive means."[31]  Salahuddin v. Goord, 467 F.3d at 273-74 (fn. omitted); see also,

---

[31]    RLUIPA provides in part:

> No government shall impose a substantial burden on the religious exercise of a person
> residing in or confined to an institution, . . . unless the government demonstrates that
> the imposition of the burden on that person– (1) is in furtherance of a compelling
> governmental interest; and (2) is the least restrictive means of furthering that
> compelling governmental interest.

(continued...)

e.g., Chavis v. Goord, No. 00-CV-01418, 2007 WL 2903950 at *3 n.3 (N.D.N.Y. Oct. 1, 2007); Rahman v. Goord, 2007 WL 1299408 at *5 (RLUIPA "imposes a more exacting standard on prison officials" than the First Amendment does.).

In 2004, the Second Circuit declined to consider whether a "plaintiff must demonstrate that the burden on his beliefs was 'substantial' in order to state a constitutional claim" under the Free Exercise Clause, like under RLUIPA. McEachin v. McGuinnis, 357 F.3d at 203.[32/] In 2006, in Salahuddin v. Goord, the Second Circuit held that the First Amendment requires prisoners to "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs," but declined to address "Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement." 467 F.3d at 274-75 & n.5. Some courts within this Circuit subsequently have held that a plaintiff must establish a "substantial burden" under the First Amendment as well as under RLUIPA. See, e.g., Kole v. Lappin, No. 07-cv-1711, 2008 WL 1777379 at *4 (D. Conn. Apr. 16, 2008); Odom v. Dixion, 04-CV-889, 2008 WL 466255 at *5-6 (W.D.N.Y. Feb. 15, 2008); Singh v. Goord, 520 F. Supp. 2d at 509 n.12; Rahman v. Goord, 2007 WL 1299408 at *4; King v. Bennett, 2007 WL 1017102 at *4; Smith v. Nuttal, 2007 WL 837111 at *4. Other courts have found that Salahuddin did not

---

[31/] (...continued)
42 U.S.C. § 2000cc-1(a)(1)-(2).

[32/] A "substantial burden" is defined as a "situation where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." McEachin v. McGuinnis, 357 F.3d at 202 n.4 (internal quotations omitted, quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir.1996)); see also, e.g., Allan v. Woods, 2008 WL 724240 at *4; King v. Bennett, No. 02-CV-349, 2007 WL 1017102 at *4 (W.D.N.Y. Mar. 30, 2007).

definitively resolve whether prisoners must demonstrate a "substantial burden" to establish a First Amendment free exercise claim. See, e.g., Graham v. Mahmood, 2008 WL 1849167 at *12 n.23 ("[I]t is possible to argue that a substantial burden is not . . . an element of a free exercise claim."); Ochoa v. Connell, 2007 WL 3049889 at *6 n.10 ("[W]e believe that it is not entirely clear in this Circuit whether a prisoner plaintiff complaining of religious infringement must, as a prerequisite to stating a constitutional free exercise claim, establish that the prison policy at issue 'substantially burdened' the free exercise of his religion."); Johnson v. Guiffere, 2007 WL 3046703 at *5 n.7; Sproul v. Goord, 2007 WL 2609787 at *11 n.11 (doubting "that the Second Circuit has in fact laid the matter to rest," but finding "it unnecessary to take a stance" regarding whether First Amendment free exercise claims require establishing a substantial burden.).

Given the unresolved nature of this debate, this decision applies the less burdensome standard to Tafari's First Amendment claims, to ensure that if summary judgment is granted for defendants, the Court has used a legal test that most favors Tafari.

**B.      Application f the Legal Standard to Tafari's Claims of Denial of Kosher Meals in Transit**

**1.      Denial of Kosher Bag Lunches on January 16 and 20, 2004**

On January 16 and 20, 2004, Downstate Correctional Facility[33] denied Tafari four Kosher meals over a holiday weekend when Tafari arrived and departed Downstate. (See page 11

---

[33]      Downstate Correctional Facility is the only DOCS facility located in the Southern District of New York that Tafari claims denied him Kosher meals while in transit to other facilities; all other DOCS facilities named by Tafari in his complaint are located in the Northern and Western Districts of New York. See DOCS Facility Listing, http://www.docs.state.ny.us/faclist.html (last visited May 27, 2008). All claims not arising in the Southern District of New York were transferred to the Northern District of New York (see page 18 & n.13 above), and will not be considered herein.

above.)  It is undisputed that Downstate denied Tafari these Kosher meals because Tafari failed to notify the appropriate staff members before he left the facility that he required Kosher meals while traveling between facilities.[34]  (See page 11 above.)

DOCS may reasonably demand that inmates traveling between facilities alert security personnel to their dietary needs prior to traveling, so that facility staff can prepare special meals, such as the CAD, in a timely fashion; this requirement to pre-order Kosher meals places little burden on Jewish inmates.  See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404 (1987) ("In considering the appropriate balance of [the interests of prison officials and prisoners' First Amendment rights], we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'") (quoting Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, (1979)); Davidson v. Murray, No. 92-CV-0283, 2005 WL 1123756 at *3 (W.D.N.Y. May 10, 2005) (an inmates's denial of Kosher meals for eight days did not implicate the Free Exercise Clause when denial was attributable to reevaluation process required by the correctional facility to which plaintiff had recently transferred); Resnick v. Adams, 348 F.3d 763, 768-71 (9th Cir. 2003) (Federal Bureau of Prisons' requirement that inmates requesting kosher diet submit written application and obtain chaplain's approval is reasonably related to legitimate penological interest and does not violate plaintiff's Free Exercise rights.); Stavenjord v. Corrections Corp. of America, No. CV 05-3024, 2007 WL 215816 at *5 (D. Ariz. Jan. 26, 2007) ("The

---

[34]      Tafari's January 25, 2004 Grievance admitted that he requested a Kosher meal after boarding the bus on January 16 and 20.  (See page 11 above.)

requirement that an inmate complete paperwork or meet with his chaplain in order to obtain religious items is not a substantial burden."); <u>see also</u>, <u>e.g.</u>, <u>Cole</u> v. <u>Artuz</u>, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (requiring "inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services" both accommodates inmates' religious needs and prison security requirements).

Downstate staff did not violate Tafari's religious rights on January 16 and 20, 2004 when they did not provide Tafari with Kosher meals because he did not timely request Kosher meals, requesting them only when he already was on the bus.

### 2. Denial of Kosher Bag Lunches on June 20 and 24, 2005

<u>Washington</u> Correctional Facility denied Tafari Kosher bag lunches when Tafari arrived from Downstate Correctional Facility on June 20, and when Tafari returned to Washington Correctional Facility on route to Eastern Correctional Facility on June 24.[35/] (<u>See</u> pages 12-14 above.) This Court has already ruled that it will not consider any claims arising from the actions of Washington Correctional Facility staff because the facility – and hence the defendants personally involved in the claim – is not located within the Southern District of New York. (<u>See</u> DOCS Facility Listing, http://www.docs.state.ny.us/faclist.html (last visited May 27, 2008).) The S.D.N.Y.

---

[35/] Tafari requested a Kosher bag lunch from Downstate staff, who told Tafari that Washington staff provide Kosher bag lunches upon arrival at that facility. (<u>See</u> page 12 above.)

Washington Correctional Facility later admitted that they had failed to properly provide a "C.A.D. transit lunch" to Tafari, and stated that they would provide Kosher bag lunches in the future. (<u>See</u> page 13 above.)

Defendants therefore are entitled to summary judgment on the claims arising from Washington Correctional Facility's actions on June 20 and 24, 2005.

### 3. Denial of Kosher Bag Lunch on July 26, 2005

On July 26, 2005, Tafari alleges that Downstate Correctional Facility provided Tafari with a bag lunch containing non-Kosher cheese, while DOCS maintained that the sandwiches contained Kosher cheese. (See pages 14-15 above.) Even if Tafari's bag lunch contained non-Kosher cheese, this single in transit meal, by itself, does not constitute a violation under the First Amendment or RLUIPA, as any violation was de minimis. E.g., McEachin v. McGuinnis, 357 F.3d 197, 203 n.6 (2d Cir. 2004) ("There may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim 'de minimis non curat lex' applies."); see, e.g., Norwood v. Strada, 249 Fed. Appx. 269, 272 (3d Cir. 2007) (Denial of religiously certified (halal) meals during prison's emergency lock-down was "a mere de minimis intrusion" that failed to substantially burden the inmate's religious beliefs.); Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (Affirming summary judgment for defendants where denial of pork-free meal on three isolated occasions out of 810 meals constituted de minimis burden, where caused by "institutional shortage," and plaintiff "has not alleged a routine or blanket practice of denying him pork-free meals."); Thomas v. Picio, 04 Civ. 3174, 2008 WL 820740 at *6 & n.8 (S.D.N.Y. Mar. 26, 2008) (assuming that inmate plaintiff was denied Kosher meals for eight days, "such a denial is not a substantial burden" on her free exercise of religion); Odom v. Dixion, 04-CV-889, 2008 WL 466255

at *11 (W.D.N.Y. Feb. 15, 2008) (DOCS' failure to provide Kosher meals on seven occasions due to "an administrative error based on Plaintiff's failure to timely advise [the facility's] food service personnel of his brief confinement on keeplock status" does not "support a § 1983 violation under either the First Amendment or RLUIPA.").[36] Downstate staff, therefore, did not violate Tafari's religious rights on this occasion.

### 4. Denial of Kosher Bag Lunch on September 26, 2005

On September 26, 2005, Tafari was denied a Kosher bag lunch when transported from Downstate to Elmira Correctional Facility. (See page 15 above.) Tafari claims that he informed Downstate officers that he required a Kosher bag lunch prior to departure, although Downstate Deputy Superintendent Jacobsen later suggested that Tafari "alert security earlier regarding [Tafari's] meal requirement." (See pages 15-16 above.) Whether Tafari provided Downstate staff with enough lead time to prepare a Kosher transit meal or not, Downstate's failure to do so, much like their possible failure to do so on July 26, 2005, did not substantially burden Tafari's religious beliefs, and constituted, at most, a de minimis violation. (See cases cited on pages 38-39 above.)

---

36/    But cf., Shakur v. Selsky, 391 F.3d 106, 120 (2d Cir. 2004) (denial of attendance at feast for major Muslim religious observance stating free exercise and RLUIPA claim); Mitchell v. Goord, No. 04-CV-366, 2007 WL 189087 at *7 (N.D.N.Y. Jan. 22, 2007) ("Thus, on this record, material issues of fact remain as to whether the defendants significantly interfered with Mitchell's religious beliefs when on at least four occasions, and possibly several times a week, they failed to provide him with meals that met the requirements of a kosher diet.").

### 5. Summary:  Considering All SDNY Meal Denials In Total

Putting aside the June 20 and 24, 2005 Washington Correctional Facility incidents that are not before the Court, Tafari's claims boil down to the denial of Kosher meals in transit on four occasions over an almost two year period.  Clearly, the January 16 and 20, 2004 problem arose from Tafari's failure to request Kosher meals <u>before</u> leaving the facility.  The remaining denials, on July 26, 2005 and September 26, 2005, singly or collectively (and even including the other four occasions above), constitute a <u>de minimis</u>, not a substantial, interference with Tafari's free exercise of religion.

This is especially so for several additional reasons.  First, the denials were not intentional or malicious, but appear to at most be the result of negligence by prison officials.  <u>See</u>, e.g., <u>Hawkins</u> v. <u>N.Y.S. Dep't of Corr. Servs.</u>, No. 07-CV-0405, 2008 WL 2019655 at *5 (N.D.N.Y. Mar. 10, 2008) ("One reason that [plaintiff's] First and Fourteenth Amendment [religious freedom] claims fail is because he has not alleged facts plausibly suggesting anything other than <u>negligence</u> by Defendants. . . . Negligence is not actionable under either the First or Fourteenth Amendment.") (fn. citing cases omitted); <u>Odom</u> v. <u>Dixion</u>, No. 04-CV-889, 2008 WL 466255 at *11 (W.D.N.Y. Feb. 15, 2008) (Summary judgment for defendants where "Plaintiff submits nothing contradicting Defendants' assertion that Plaintiff's temporary removal from the CAD program was nothing more than an administrative error . . . . It is settled that mere negligence on the part of prison officials is insufficient to establish liability under § 1983."); <u>Young</u> v. <u>Scully</u>, 91 Civ. 4332, 1993 WL 88144 at *7 (S.D.N.Y. Mar. 22, 1993) ("There is no evidence in the record that the alleged deprivation of

Plaintiff's first amendment [religious] rights involved any degree of fault by defendants. . . . 'Negligence alone will not carry a § 1983 action.'").[37]

Second, as a result of Tafari's lawsuit, Downstate has implemented policies to insure that inmates in transit from Downstate are provided with Kosher meals in transit. (See page 15 n.11 above.) This should alleviate the issue for Tafari for the future, further demonstrating the de minimis nature of the few prior occasions where he did not receive in transit Kosher meals.

Finally, the Court already dismissed Tafari's request for injunctive relief against the S.D.N.Y. defendants, see Tafari v. Annetts, 2007 WL 2994367 at *14, and Tafari stated in his deposition that he was not seeking monetary damages on his in transit meal claims. (See page 17 above.) Thus, he would not be entitled to any relief even if he were to prove a constitutional violation as to the in-transit Kosher meals.

Defendants' summary judgment motion on Tafari's First Amendment and RLUIPA free exercise claims regarding denial of Kosher meals while in transit should be granted.

---

[37] Moreover, it does not appear that any of the S.D.N.Y. defendants (Deputy Supts. Annetts, Jacobsen or Lurenz, and Correction Officer Kern – see Tafari v. Annetts, 2007 WL 2994367 at *2 – were personally responsible for Tafari not receiving the few in-transit meals. Certainly, Tafari has not alleged, much less provided any evidence in response to defendants' summary judgment motion, of these defendants' personal involvement in the denials of in-transit meals. While Annetts and Jacobsen responded to some of his grievances after the fact, that does not establish their personal involvement.

**CONCLUSION**

For the reasons set forth above, defendants' summary judgment motion (Dkt. No. 65) should be GRANTED and Tafari's complaint dismissed.[38]

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

---

[38] So there is no confusion, the Court makes clear that the issue of whether the First Amendment or RLUIPA requires DOCS to make available vegetarian Kosher meals to those whose religious beliefs require such meals was not before this Court. Such a claim would be against DOCS' officials in Albany – and hence in the Northern District of New York. The Court expresses no view on the viability of such a claim.

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:     New York, New York
           June 12, 2008

                                        Respectfully submitted,

                                        Andrew J. Peck
                                        United States Magistrate Judge

Copies to:   Injah Tafari  (Regular & Certified Mail)
             Inna Reznik, Esq.
             Judge George B. Daniels